J-A05024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KRESS BROTHERS BUILDERS, L.P., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PATRICIA L. WILLIAMS, DALE HILL AND JACQUELINE WILLIAMS, | |
| Appellees | No. 930 WDA 2016 |

Appeal from the Order Entered June 15, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD15-010117

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

MEMORANDUM BY BENDER, P.J.E.:              **FILED MAY 23, 2017**

Appellant, Kress Brothers Builders, L.P., appeals from the June 15, 2016 order sustaining the preliminary objections filed by Appellees, Patricia L. Williams, Dale Hill and Jacqueline Williams (hereinafter "Owners"), and dismissing Appellant's Amended Complaint to Enforce Mechanics' Lien.  After careful review, we reverse and remand.

The relevant facts and procedural history were set forth by the trial court in its Pa.R.A.P. 1925(a) opinion, as follows:

> This matter arises from [Appellant's] filing of a Mechanics' Lien Claim against the [Appellees]/Owners, Patricia L. Williams, Dale Hill and Jacqueline Williams, for work performed on their Property located at 1421 Columbus Avenue, Allegheny County, Pennsylvania 15212.  The Owners are sisters who own the Property but live in other states.  George Saddler [(hereinafter "Mr. Saddler")], the Owners' tenant, hired [Appellant] to renovate and remodel the Property after it sustained damage due to bursting water pipes.  Mr. Saddler signed a contract with

[Appellant] to repair the damage for $15,722.63. He paid $3,483.49 leaving a balance of $12,239.14. When [Appellant] was not paid the balance, [it] filed a Mechanics' Lien against the Property on June 11, 2015. The Owners were notified of the Mechanics' Lien several months later when they received a copy in the mail. The Owners failed to pay and [Appellant] filed a Complaint to Enforce Mechanics' Lien Claim on November 12, 2015. The Owners filed Preliminary Objections to the Complaint and a Motion for Sanctions on January 25, 2016.

Trial Court Opinion ("TCO"), 10/12/16, at 1-2.

On March 14, 2016, the trial court denied the Owners' Motion for Sanctions and granted Appellant twenty (20) days to file an amended complaint. Appellant filed an amended complaint on March 30, 2016. In response, the Owners again filed preliminary objections[1] and a motion for sanctions. The trial court entered an order dated June 15, 2016, dismissing Appellant's amended complaint with prejudice. On June 28, 2016, Appellant filed a notice of appeal, followed by a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant now presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred and committed an error of law in sustaining the preliminary objections filed by [Owners] and dismissing with prejudice [Appellant's] Amended Complaint to Enforce Mechanics' Lien Claim without considering as true all well[-]pleaded facts set forth therein

_____

[1] Owners' filed their preliminary objections pursuant to Section 1505 of the Mechanics' Lien Law, which provides "[a]ny party may preliminarily object to a claim upon a showing of exemption or immunity of the property from lien, or for lack of conformity with this act." 49 P.S. § 1505.

and all reasonable inferences that can be drawn therefore [*sic*]?

2. Whether the [t]rial [c]ourt erred and committed an error of law in finding that Section 1303(d) of the Mechanics' Lien Law (49 P.S. § 1303(d)) is applicable in the case *sub judice*, particularly when Appellant's Amended Complaint to Enforce Mechanics' Lien Claim never alleged that [Mr. Saddler] was [Owners'] tenant; that a landlord/tenant relationship existed; or that a leased premise even existed?

3. Whether the [t]rial [c]ourt erred and committed an error of law in holding that Section 1303(d) of the Mechanics' Lien Law (49 P.S. § 1303(d)) is an absolute bar to a mechanics' lien claim?

4. Whether the [t]rial [c]ourt erred and committed an error of law in sustaining the preliminary objections filed by Appellees and dismissing with prejudice Appellant's Amended Complaint to Enforce Mechanics' Lien Claim when Appellant should have been allowed to conduct discovery to determine:

   a. Whether any landlord/tenant relationship existed between [Mr. Saddler] and [Owners] and, if any relationship, the terms of that relationship;

   b. Owners' knowledge of [Mr. Saddler] holding himself out as owner of the subject property with respect to the case *sub judice* and in prior instances;

   c. [Owners'] knowledge of Appellant's work being done to the subject property;

   d. [Owners'] knowledge of the terms of the contract at issue in the case *sub judice*;

   e. Whether [Owners] provided consent to [Mr. Saddler] with respect to the contract at issue in the case *sub judice* and/or past contracts related to the subject property; and

   f. [Owners'] knowledge of the second check issued by The Hartford Insurance Company that has never been provided to Appellant?

Appellant's Brief at 3-5.

Before addressing the merits of Appellant's claims, we set forth our standard of review. It is well-established that,

> [i]n determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred.
>
> Our inquiry goes only to determining the legal sufficiency of [the] appellant's complaint and we may only decide whether sufficient facts have been pleaded which would permit recovery if ultimately proven. We must be able to state with certainty that upon the facts averred, the law will not permit recovery by the plaintiff.
>
> This Court will reverse the trial court's decision only where there has been an error of law or abuse of discretion. Further, when the sustaining of preliminary objections results in the denial of a claim or the dismissal of a suit in a mechanics' lien proceeding, preliminary objections should be sustained only where the case is clear and doubtless.

**Wendt & Sons v. New Hedstrom Corp.**, 858 A.2d 631, 632 (Pa. Super. 2004) (internal quotation marks and citations omitted).

To begin, we note "[t]he Mechanics' Lien Law, Title 49 of Pennsylvania's Statutes, is a creation in derogation of the common law and, therefore, any question of interpretation shall be resolved in strict, narrow construction. To effectuate a valid Mechanics' Lien claim, the contractor … must strictly comply with the requirements of Title 49." **Wyatt PNC v. Citizens Bank of Pennsylvania**, 976 A.2d 557, 564 (Pa. Super. 2009) (internal citations omitted). **See also** 49 P.S. §§ 1101–1902. Moreover, "[t]he right to the lien arises not from the act of furnishing the labor and materials, but rather from the debt arising therefrom. The right to file a

mechanics' lien must have a contract as its basis." ***Murray v. Zemon***, 167 A.2d 253, 255 (Pa. 1960).

Here, the underlying contract was entered into between Appellant and Mr. Saddler, the tenant. The record reflects that no contractual relationship exists between Appellant and Owners. However, Appellant asserts that throughout its dealings with Mr. Saddler, Mr. Saddler misrepresented himself as the owner of the property and that "[a]t no time did Mr. Saddler ever advise Appellant that he was a tenant, rather than the owner of the Property." Appellant's Brief at 7. Appellant further avers that Owners "not only knew that Mr. Saddler was advising third parties that he was the owner of the Property, but that they gave their consent and authorization to Mr. Saddler to advise third parties that he was the owner of the Property; to make improvements and repairs to the Property; and to contract with third parties to make improvements and repairs to the Property." ***Id.*** at 8-9.

It has been well-established that even if the owners had knowledge of and consented to repairs or renovations to the Property, that is not sufficient in itself to sustain a mechanics' lien claim against Owners. ***See Fluke v. Lang***, 128 A. 663, 663-64 (Pa. 1925) (observing "[l]iability is not predicated merely upon the fact that the owner knows a contract is to be made for work to be done on his property; he must also know that the person who intends to make it is 'acting as if he were the owner'"). In order for the claim to be valid against Owners, where they are not a party to the contract, their consent must appear in the form of a written statement, signed by Owners,

and the statement must state that the improvements to the Property are being made for their immediate use and benefit. *See Murray*, 167 A.2d at 256 (adding "[t]his [written statement] is a condition precedent. The claim filed must on its face show the existence of such consent to satisfy this requirement"); *see also* 49 P.S. § 1303(d).[2] There is no such written statement by Owners in the present case.

In its 1925(a) opinion, the trial court reasoned, "where a contractor enters into an agreement for property improvements with a tenant and fails to obtain 'written notice' from the property owners consenting to the improvements, as required by Section 1303(d), the mechanics' lien complaint should be dismissed pursuant to the owner's preliminary objections." TCO at 2 (citing *Key Auto. Equip. Specialists, Inc. v. Abernathy*, 636 A.2d 1126, 1128 (Pa. Super. 1994)). However, it is important to note that our holding in *Key Auto. Equip. Specialists, Inc.* was premised on our determination that the owners acted in good faith in

_____

[2] In 1963, the Mechanics' Lien Law was amended to include Section 1303(d), which provides as follows:

> Leasehold premises. No lien shall be allowed against the estate of an owner in fee by reason of any consent given by such owner to a tenant to improve the leased premises unless it shall appear *in writing signed by such owner* that the erection, construction, alteration or repair was in fact for the immediate use and benefit of the owner.

49 P.S. § 1303(d) (emphasis added).

their dealings with the contractor and that throughout contract negotiations, the contractor was fully aware that it was entering into a contract with the tenant, and not the owner of the property. *Id.* at 1130. In our analysis, we noted that these facts were distinguishable from those in ***Chambers v. Todd Steel Pickling, Inc.***, 470 A.2d 159 (Pa. Super. 1983), where "we found that estoppel *may* lie against the true owner of property, despite the absence of the written notice requirement of section 1303(d), where facts have been withheld and where the property owner did not act in good faith throughout the transaction." ***Key Auto. Equip. Specialists, Inc.***, 636 A.2d at 1130 (quoting ***Chambers***, 470 A.2d at 164) (emphasis added).

We find ***Chambers*** to be more analogous to the case presently before us. Thus, we reiterate our summary of ***Chambers***, as follows:

> In ***Chambers***, Robert Berger, the president and sole stockholder of Todd Steel Pickling, Inc. (Todd Steel) entered into a construction contract with George Chambers to build a residential home on property leased to Berger by Todd Steel. In negotiating this agreement, Berger led Chambers to believe that he was the actual owner of the property and, therefore, did not disclose that the property was leased to him by the owner, Todd Steel. Chambers did not obtain a written waiver from Todd Steel as required under section 1303(d).
>
> After Mr. Berger failed to make certain payments, [Mr.] Chambers filed a mechanics' lien against both [Mr.] Berger and Todd Steel. Todd Steel filed preliminary objections, seeking the protection of the Mechanics' Lien Act. The trial court agreed, holding that as [Mr.] Chambers failed to obtain a section 1303(d) written waiver from Todd Steel, [Mr.] Chambers could not seek to recover from Todd Steel. [Mr.] Chambers appealed to the Superior Court.
>
> On appeal, [Mr.] Chambers asserted that because [Mr.] Berger had misled him and induced his reliance as to the ownership of

the property, "there was no necessity for the writing called for in 49 [P.S.] § 1303(d)." We agreed. In finding that Todd Steel was estopped from seeking the protection of the Act, we were ever mindful of a contractor's duty to inquire into the nature of the consent given by the actual owner of the property. We held, however, that such duty cannot be imposed, "where the president and sole stockholder of the corporate owner of the property leads a contractor to believe that he is the actual property owner."[3]

*Key Automotive Equipment Specialists, Inc.*, 636 A.2d at 1129 (citing

*Chambers*, 470 A.2d at 162-64) (internal citations omitted).

The *Chambers* Court recognized a prior holding of the Pennsylvania

Supreme Court, which stated that "while an owner may consent to his

tenant's improvement of the property, without assuming any liability for the

work done, provided he acts in good faith throughout, he *cannot escape*

*such liability* if he knows of the tenant's intention to make a contract 'acting

as if he were the owner.'" *Chambers,* 470 A.2d at 163 (quoting *Fluke*, 128

A. at 664) (emphasis added).[4]

_____

[3] This holding belies Owners' assertion in the instant case that Appellant had the duty to investigate into the ownership of the Property, regardless of whether Mr. Saddler held himself out to be the owner of the Property. *See* Appellees' Brief at 8.

[4] The *Chambers* Court explained:

In *Fluke v. Lang*, *supra*, the Court was interpreting Section 2 of the Mechanics' Lien Act of 1901, replaced by 49 P.S. § 1303(d), in conjunction with Section 4 of the 1901 Act, which was omitted from the Mechanics' Lien Law of 1963. Section 4 of the Mechanics' Lien Act of 1901 provided:

Any owner, not being a committee, guardian or trustee, as aforesaid, who shall knowingly suffer or permit any person,

*(Footnote Continued Next Page)*

This Court also finds persuasive the opinion in **Kelly v. Hannan**, 566 A.2d 310 (Pa. Super. 1989). As alleged in the present case, it was established in **Kelly** that the contractor believed he was contracting with the owners of the property and that the owners knew of the tenants' intentions to contract with the contractor as though they were the owners. Accordingly, we held:

> [T]he leasing agreement entered into in this case does not engage the language of 49 P.S. § 1303(d) wherein the owner of the estate in fee is protected from liability. We believe the appellee failed to act with good faith throughout the transaction and produced a lease at the time of the hearing in order to

*(Footnote Continued)* _____

> acting as if he were the owner, to make a contract for which a claim could be filed, without objecting thereto at the time, shall be treated as ratifying the act of such person acting as if he were the owner, and the claim may be filed against the real owner, with the same effect if he himself had made the contract. Ratification shall also be presumed, and like subjection to lien shall follow, if the owner, not being a committee, guardian or trustee, as aforesaid, subsequently learning of such contract or of work being done upon his property, shall not, within ten days thereafter, repudiate the same, either by notice to the contractor and subcontractor or by posting such repudiation on the most public part of the structure or other improvement.

> According to the explanatory comments of the Joint State Government Commission, the above section does not appear in the Mechanics' Lien Law of 1963 because it was omitted as unnecessary. Despite the fact that Section 4 of the Act of 1901 is not found in the present statute, we find the interpretation given Section 2 of that Act persuasive in interpreting the nearly identical language of 49 P.S. § 1303(d).

**Id.**

- 9 -

engage the language of § 1303(d)…. For the reasons stated above we reverse the lower court's order granting the appellees' preliminary objections.

*Id.* at 318.[5]

Here, the trial court dismissed Appellant's Amended Complaint with prejudice, "finding that Section 1303(d) controls, and that [Mr.] Saddler, a tenant, could not bind the owners when there was no written authorization to do so." TCO at 3. However, based on our foregoing analysis, it is clear that Section 1303(d) of the Mechanics' Lien Law does not act as an absolute bar to a mechanics' lien claim. In fact, if it is established that Owners had knowledge that Mr. Saddler intended to enter into a contract with Appellant while portraying himself as the owner of the Property, Appellant may have a valid mechanics' lien claim against Owners, because Owners would be estopped from asserting protection from liability under section 1303(d). We deem the trial court's misapplication of the law to constitute reversible error.

_____

[5] In reaching the decision in **Kelly**, this Court was guided by the following principles:

> The owner of leased property may be found liable for the improvements a tenant has made if the owner has "not acted in good faith throughout the transaction knowing that the tenant intends to make a contract acting as if he were the owner." **Chambers**, … 470 A.2d at 161. Where facts are withheld and any attempt is made to mislead the contractor and the owner has promised to pay for the cost of the improvements, the theory of estoppel will lie. **Murray**, … 167 A.2d at 256.

*Id.* at 316.

Additionally, Appellant avers that the trial court abused its discretion and committed an error of law in sustaining Owners' preliminary objections in the nature of a demurrer and in dismissing its Amended Complaint with prejudice, without considering as true all well-pleaded facts set forth therein. Appellant's Brief at 13. In order to properly review Owners' demurrer, "the trial court was required to determine whether the law precluded recovery notwithstanding Appellant's well-pleaded factual averments and all reasonable inferences that could be drawn therefrom." ***B.N. Excavating, Inc. v. PBC Hollow-A, L.P.***, 71 A.3d 274, 278 (Pa. Super. 2013). The record reflects that Appellant expressly averred the following, in relevant part, in its Amended Complaint:

> 8. [Appellant] came to inspect the Property and[,] at that time[,] Mr. Saddler provided [Appellant] with homeowner's insurance information through The Hartford Insurance Company[,] which reflected that Mr. Saddler was the owner of the [P]roperty.
>
> 9. On or about February 19, 2014, [Appellant] and Mr. Saddler entered into a contract ("Contract") for [Appellant] to perform renovation and restoration services at the Property for the total amount of $15,722.63. A copy of the Contract is attached hereto as Exhibit "2".
>
> 10. Per Mr. Saddler's representations to [Appellant,] the Contract acknowledged that Mr. Saddler was the owner of the Property.
>
> 11. Mr. Saddler signed the Contract acknowledging that he was the owner of the Property.
>
> 12. At no time did Mr. Saddler ever advise [Appellant] that he was a tenant, rather than the owner of the Property, or that he was leasing the Property from another party.
>
> …

- 11 -

14. At no time did Mr. Saddler ever provide [Appellant] … with a copy of any lease with respect to his occupancy of the Property.

15. [Appellant] performed all of the work on the Property as specified in the Contract.

16. [Appellant] completed its work on the Property on February 23, 2015.

17. During the entire time that [Appellant] was performing its work on the Property, Mr. Saddler represented himself as the owner of the Property.

18. The Hartford Insurance Company issued a check on Mr. Saddler's homeowner's insurance, in the amount of $3,483.49 to Mr. Saddler and [Appellant], which was signed by both parties and paid to [Appellant] for its work.

…

21. To date, the amount of $12,239.14 still remains due [to Appellant] for its work performed on the Property.

…

24. [Owners] were aware that Mr. Saddler was residing at the Property.

25. [Owners] had knowledge of the damage to the Property and the work being performed by [Appellant].

26. [Owners] had knowledge of the Contract.

27. *[Owners] knew that Mr. Saddler was advising third parties that he was the owner of the Property.*

28. *[Owners] gave their consent and authorization for Mr. Saddler to advise third parties that he was the owner of the Property.*

29. *[Owners] gave their consent and authorization for Mr. Saddler* to make improvements and repairs to the Property and *to contract with third parties to make improvements and repairs to the Property.*

30. [Owners] were aware that Mr. Saddler was maintaining the homeowner's insurance on the Property.

31. Subsequent to the work performed by [Appellant] on the Property, [Owners] listed the Property for sale at a listing price

of approximately $75,000, more than double the Property's recently appraised value by Allegheny County for assessment purposes.

Appellant's Amended Complaint, 3/30/16, at 3-5 (emphasis added).

Mindful of our standard of review, and the trial court's obligation to view Appellant's factual averments and reasonable inferences as true, we cannot "state with certainty that upon the facts averred, the law will not permit recovery." **Wendt & Sons**, 858 A.2d at 632. As this case is not clear and free from doubt, we discern that dismissal was not warranted. **See B.N. Excavating, Inc.**, 71 A.3d at 280 (concluding that dismissal was not warranted where the Court could not find that a sufficient record existed to sustain the appellees' demurrer and to dismiss the appellant's claim). Moreover, considering our previous holdings in **Chambers** and **Kelly**, Appellant's evidence in this case may provide a sufficient basis to attach a lien claim. Accordingly, an issue of fact exists which must be explored at an evidentiary proceeding. **See id.**

In light of the foregoing case law interpreting the applicability of 49 P.S. § 1303(d) and the averments contained in Appellant's Amended Complaint, it does not appear with certainty that the law precludes Appellant's recovery. Accordingly, we reverse the June 15, 2016 order sustaining Owners' preliminary objections and dismissing Appellant's Amended Complaint with prejudice, and we remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/23/2017